UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TARA GRAYS,

       *Plaintiff*,

  v.

KRISTI NOEM,

       *Defendant*.

Civil Action No. 24 - 1809 (LLA)

### MEMORANDUM OPINION

Plaintiff Tara Grays brings this action against Kristi Noem in her official capacity as the Secretary of Homeland Security.[1] Ms. Grays alleges that her employer, the Department of Homeland Security ("DHS"), discriminated against her, retaliated against her, and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending before the court is the Secretary's motion to dismiss. ECF No. 9. For the reasons explained below, the court will grant the Secretary's motion and dismiss the case.

### I.    FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Grays's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Ms. Grays is a Native American, Jewish woman who, at the time of the alleged incidents, was working as a Customs and Border

---

[1] Ms. Grays named former Secretary of Homeland Security Alejandro N. Mayorkas as Defendant, but the current Secretary is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

Protection ("CBP") Officer at the Queen Beatrix Airport in Oranjestad, Aruba.  ECF No. 1 ¶¶ 14-15.  In 2019, she filed an Equal Employment Opportunity ("EEO") complaint for pregnancy discrimination.  *Id.* ¶ 16.  At some point before the events giving rise to this case, her then-husband also filed an EEO complaint and whistleblower complaint "for discrimination against African American travelers at the Ports of Entry, which became national and international news."  *Id.*

Between January and February 2021, CBP Mission Support Specialist Melissa Shepp and Branch Chief Thomas Price questioned Ms. Grays about cash advance payments from her government travel card and various relocation and foreign travel allowances.  *Id.* ¶¶ 20-21.  In March, Ms. Shepp launched an investigation into the charges on Ms. Grays's government travel card and her possible falsification of travel orders.  *Id.* ¶ 32.  Ultimately, in September, Nancy Caldwell, Chief of the Travel Section, sent Ms. Grays a letter stating that she owed more than $6,300 for overpaid relocation allowances.  *Id.* ¶ 22.  As a result, the agency began garnishing Ms. Grays's wages in June 2023.  *Id.* ¶ 23.  Ms. Grays alleges that this investigation was discrimination on the basis of her race or religion, part of a hostile work environment, or retaliation for engaging in protected activity.

Ms. Grays alleges that CBP investigated her on two other occasions.  In October 2021, she was notified that she was being placed under investigation for misconduct, but she does not provide any additional details in her complaint.  *Id.* ¶ 34.  In January 2022, CBP opened an investigation after Ms. Grays "fail[ed] to update an address."  *Id.* ¶ 36.  In reference to the second investigation, Ms. Grays states that a CBP director denied her legal representation, threatened her with immediate disciplinary action, and "took her sworn statement under coercion."  *Id.*  She believes this was also discriminatory and retaliatory.

Ms. Grays alleges mistreatment on the basis of her religion. In December 2020, a CBP Officer said to another officer (and in Ms. Grays's presence) that "passengers from Israel were liars[] [and] felt entitled" before asking aloud, "What is wrong with Jews?" *Id.* ¶ 19. In February 2021, another CBP Officer remarked, "fucking Jews." *Id.* ¶ 24. And in September 2021, a CBP director asked Ms. Grays to write a report following an incident in which a handwritten note stating "Jesus Loves You" was found on an employee's desk. *Id.* ¶ 31.

Ms. Grays also reports other instances of alleged discrimination, retaliation, and harassment from supervisors and coworkers that occurred in 2021. Specifically, in February, a CBP director instructed Ms. Grays "to locate her spouse or he would send the police to her house in Michigan." *Id.* ¶ 25. Between March and July, Supervisory CBP Officer Frances Savage laughed at Ms. Grays after she was reprimanded by a fellow officer, *id.* ¶ 26, denied her a water break, *id.* ¶ 28, emailed her asking why she had not attended a meeting, *id.* ¶ 29, and denied her request for physical fitness time, *id.* ¶ 33. In April, a coworker hid Ms. Grays's documents and Personal Identity Verification card. *Id.* ¶ 27. And in July, Training Coordinator Denise Powers emailed Ms. Grays and other supervisors a reminder to complete a required whistleblower training. *Id.* ¶ 30.

At some point during this time, Ms. Grays applied for the position of Program Manager (GS-1895-13) in Sterling, Virginia. *See id.* ¶ 35. In January 2022, she learned that she had not been selected for the position. *Id.* ¶ 37.

## II.     PROCEDURAL HISTORY

In April 2021, Ms. Grays filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and she received a right-to-sue letter in November 2023. ECF No. 1 ¶¶ 10, 13. In February 2024, Ms. Grays brought this action in the U.S. District Court for the

3

Eastern District of Michigan, ECF No. 1, and it was subsequently transferred to this court, ECF Nos. 6, 7.  In her complaint, Ms. Grays alleges disparate treatment based on race (Count I) and religion (Count III), a hostile work environment based on race (Count II) and religion (Count IV), and retaliation (Count V).  ECF No. 1 ¶¶ 40-77.  Ms. Grays seeks instatement to an appropriate position at the DHS, compensatory and punitive damages, and attorney's fees and costs.  *Id.* at 15-16.

In September 2024, the DHS filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF No. 9, which is now fully briefed, ECF Nos. 12, 13.

### III.     LEGAL STANDARD

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor will "'naked assertions' devoid of 'further factual enhancement'" suffice.  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

While a Title VII plaintiff need not establish a prima facie case of discrimination, retaliation, or hostile work environment at the pleading stage, *see Swierkiewicz v. Sorema N.A.*,

4

534 U.S. 506, 510-11 (2002), she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination, retaliation, or hostile work environment from the complaint. "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a . . . claim that is 'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

## IV.   DISCUSSION

Ms. Grays alleges that the Secretary violated Title VII by discriminating against her on the basis of her race and religion (Counts I and III), creating a hostile work environment (Counts II and IV), and retaliating against her (Count V). *See* ECF No. 1 ¶¶ 40-77. The court addresses each in turn.

### A.   Disparate Treatment

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to her "compensation, terms, conditions, or privileges of employment" because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a claim under Section 2000e-2(a)(1) must plead that she belongs to a protected class, that she suffered an adverse employment action, and that a causal connection exists between her protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Ms. Grays alleges disparate treatment on the basis of race and religion, asserting that she was placed under investigation; subjected to offensive remarks, questions, and ridicule; refused a water break and physical fitness time; and passed over for a new position at CBP. *See generally* ECF No. 1. There is no dispute that Ms. Grays is Native American and Jewish and is thus in a

5

protected class. *Id.* ¶ 15. Accordingly, the court focuses on whether Ms. Grays has alleged adverse employment action and a causal connection between any adverse action and a protected characteristic.

### 1.     Adverse employment action

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms and conditions of her employment to support a disparate treatment claim. *Id.* at 350. That holding is largely consistent with the D.C. Circuit's 2022 en banc decision in *Chambers*, in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to a heightened "objectively tangible harm") to plead an adverse action.[2] 35 F.4th at 874-75. Although Ms. Grays filed her complaint before *Muldrow* was decided, it applies. *See Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *see also Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.").

The Secretary argues that the adverse-action standard enunciated in *Muldrow* does not apply because Ms. Grays is covered by the federal-sector provisions of Title VII, whereas the

---

[2] The Secretary asserts that *Muldrow* "effectively displaces" *Chambers*, ECF No. 9-1, at 4, but, as Justice Kavanaugh explained in his *Muldrow* concurrence, the approaches—while slightly doctrinally different—lead to the same outcome, *Muldrow*, 601 U.S. at 363-65 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*], . . . [t]he discrimination is harm. The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . . I expect that the [majority's] approach and my preferred approach will land in the same place and lead to the same result . . . .").

plaintiff in *Muldrow* was not. ECF No. 9-1, at 3-7. In the Secretary's view, a federal-sector plaintiff may bring a claim based on an adverse "personnel action" only as defined by the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A). *Id.* at 6-7. The court disagrees. The D.C. Circuit has consistently held that the private- and federal-sector provisions of Title VII should be construed similarly. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *see Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 54 (D.D.C. 2022) ("[*Chambers*] did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike. If anything, it affirmed the status quo."). The *Chambers* Court also overruled *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), which itself involved a federal-sector employee, *id.* at 448; *see Chambers*, 35 F.4th at 882. This suggests that the D.C. Circuit intended its interpretation of the adverse-action requirement, as subsequently informed by *Muldrow*, to apply to all Title VII discrimination claims, not just those brought by private-sector employees. *See Chambers*, 35 F.4th at 878-82.

In an attempt to circumvent *Chambers*, the Secretary argues that the Supreme Court's reasoning in *Babb v. Wilkie*, 589 U.S. 399 (2020), controls. In *Babb*, the Court interpreted the federal-sector provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633(a), holding that "age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." 589 U.S. at 405-06. In reaching this conclusion, the Court assumed that the meaning of "personnel action" in the federal-sector provision of the ADEA was the same as the Civil Service Reform Act's definition of the term. *Id.* The Secretary contends that, since Title VII's federal-sector provisions also use the term "personnel action," only adverse personnel actions as defined by the Civil Service Reform Act are actionable for federal-sector Title VII plaintiffs. ECF No. 9-1, at 3-7. This difference

7

matters, in the Secretary's view, because the Civil Service Reform Act includes in its definition of personnel actions "other, unenumerated 'change[s] in duties, responsibilities, or working conditions' only if they are 'significant,'" *id.* at 3 (alteration in original) (quoting 5 U.S.C. § 2302(a)(2)(A)(xii)), and the "significant" change requirement is a higher standard than that applied under *Muldrow*.

However, the *Babb* Court's assumption was just that—an assumption. The Court observed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage, and [the Court] assume[d] that it has the same meaning under the ADEA." *Babb*, 589 U.S. at 405. "That observation has no effect on whether that definition must [also] govern Title VII federal-sector claims." *Doe v. Austin*, No. 22-CV-3474, 2024 WL 864270, at *10 (D.D.C. Feb. 29, 2024). Accordingly, like several other judges in this district, this court rejects the Secretary's argument that *Babb* requires federal-sector Title VII plaintiffs to make a different showing than private-sector Title VII plaintiffs to establish an adverse employment action. *See, e.g.*, *Wilson v. Noem*, No. 20-CV-100, 2025 WL 1000666, at *21-22 (D.D.C. Apr. 3, 2025) (noting that "*Babb* [was] nothing new" when the D.C. Circuit decided *Chambers* (quoting *Austin*, 2024 WL 864270, at *10)); *Stewart v. U.S. Dep't of Agric.*, No. 23-CV-1194, 2024 WL 4332618, at *4 (D.D.C. Sep. 27, 2024) (holding that *Babb* did not alter the meaning of "personnel action" in Title VII's federal-sector provision); *see also Turner v. Buttigieg*, No. 23-CV-1665, 2024 WL 4346332, at *8 (D.D.C. Sep. 30, 2024) (declining to construe *Chambers* as limited to private-sector Title VII suits); *Cameron v. Blinken*, No. 22-CV-31, 2023 WL 5517368, at *4

(D.D.C. Mar. 22, 2023) (same); *Garza v. Blinken*, No. 21-CV-2770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (same); *Bain*, 648 F. Supp. 3d at 54-55 (same).[3]

Beyond disputing whether *Muldrow* applies to federal-sector employees, the Secretary does not allege that Ms. Grays has failed to satisfy the adverse-action standard. The court will thus proceed to causation.

### 2.  Causal connection

Ms. Grays must allege a causal connection between her protected status and the adverse actions. *See Baloch*, 550 F.3d at 1196. One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator. *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second and third alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation

---

[3] Indeed, the D.C. Circuit recently applied the *Muldrow* standard to a federal employee's claim under the ADEA, the same statute at issue in *Babb*. *Van Horn v. Del Toro*, No. 23-5169, 2024 WL 4381186, at *2-3 (D.C. Cir. Oct. 3, 2024) (per curiam) (noting that the employer also conceded that the actions at issue were viable personnel actions under the ADEA).

element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

Ms. Grays does not sufficiently allege that similarly situated employees of a different race or religion were treated more favorably, nor does she allege any other facts that would support a reasonable inference of discrimination. To the contrary, the complaint rests on conclusory statements of the legal standard that the court need not credit. *Ashcroft*, 556 U.S. at 678. Specifically, Ms. Grays alleges in her complaint that "[o]thers who were not members of the protected class that Plaintiff is a member of were not treated in the discriminatory manner that Plaintiff was subjected to." ECF No. 1 ¶ 39. This statement, however, amounts to nothing more than a conclusory assertion devoid of supporting facts. Ms. Grays provides no details about the identity, race, or other characteristics of any alleged comparator. While she mentions numerous instances of perceived discrimination—like being denied a water break or the initiation of various investigations—she does not allege any facts indicating that these incidents were *because* of her race or religion. At most, she flatly claims that "[t]he occurrences described [in the complaint] occurred . . . because of [Ms. Grays's] race and/or religion." *Id.* ¶ 38. That is nothing more than a legal conclusion, which is "never enough." *SS & T, LLC*, 2020 WL 1170288, at *5 (quoting *Bekkem*, 915 F.3d at 1275).[4]

Indeed, courts have routinely concluded that similarly bare assertions are insufficient to survive a motion to dismiss. *See, e.g.*, *Jones v. Ass'n of Am. Med. Colls.*, No. 22-CV-1680, 2023

---

[4] As the Secretary points out in her reply brief, Ms. Grays fails to address these deficiencies in her opposition brief; instead, she "merely recites the factual allegations of her [c]omplaint," almost verbatim. ECF No. 13, at 1-2; *compare* ECF No. 1 ¶¶ 2, 15, 18-19, 24, 31, 38-39, *with* ECF No. 12, at 16-17 (quoting, with virtually no alterations, the contents of the complaint). "[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded." *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010). While the court could deem those arguments conceded, it will nevertheless address the merits of Ms. Grays's claims.

10

WL 2327901, at *11 (D.D.C. Mar. 2, 2023) ("Nowhere in [the plaintiff's] complaint does he proffer factual allegations describing 'any comparator employees [outside of his race], how they were similarly situated, or how they were treated differently than [him].'" (second and third alterations in original) (quoting *Harris v. Mayorkas*, No. 21-CV-1083, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022))); *SS & T, LLC*, 2020 WL 1170288 at *4 ("SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer 'nothing more in the way of specific facts or allegations associated with this claim.'" (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007))). Accordingly, the court will dismiss Ms. Grays's disparate treatment claims (Counts I and III).

### B.     Hostile Work Environment

To state a claim for hostile work environment, the plaintiff must show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). The incidents "must be adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam) (quoting *Baloch*, 550 F.3d at 1201).

Ms. Grays alleges that "Defendants . . . . were predisposed to harass [her] on the basis of her race [and religion] and acted in accordance with that predisposition." ECF No. 1 ¶¶ 54, 71. The Secretary responds that Ms. Grays's allegations are "at most minor miscellaneous harms, along with one non-selection," that "hardly describe the kind of objectively 'severe' or 'extreme' environment within the meaning of Title VII." ECF No. 9-1, at 11. The court agrees with the Secretary.

The standard for a hostile work environment claim is "a high bar." *Foxworth v. McDonough*, 712 F. Supp. 3d 1, 10 (D.D.C. 2024); *see Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) ("The bar for demonstrating a hostile work environment is a high one[.]"). Instances of sufficiently severe or pervasive conduct have included "us[ing] a deeply offensive racial epithet when yelling at [the plaintiff]," *Ayissi-Etoh*, 712 F.3d at 577, and forcing an employee to work in an unheated storage room for over a year, *see Singletary*, 351 F.3d at 528-29 (reversing and remanding the denial of the plaintiff's hostile work environment claim).

Ms. Grays's allegations do not clear this high bar. The harms she alleges—being investigated for misconduct, subjected to two offensive comments about Jewish individuals, laughed at, denied one water break and physical fitness time, and passed over for a position—individually and collectively fall short of supporting a hostile work environment claim. *See Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 82 (D.D.C. 2009) ("[N]on-selection for a promotion . . . fall[s] squarely within the category of 'ordinary tribulations of the workplace' that are not actionable under a hostile work environment theory."); *Harris v. Wackenhut Servs., Inc.*, 590 F. Supp. 2d 54, 75 (D.D.C. 2008), *amended*, 648 F. Supp. 2d 53 (D.D.C. 2009), *aff'd*, 419 F. App'x 1 (D.C. Cir. 2011) (holding that three racially motivated comments over the course of five years of employment were "the sort of isolated acts that courts have consistently rejected as the

12

basis for supporting Title VII claims"); *Asghar v. Paulson*, 580 F. Supp. 2d 30, 38-40 (D.D.C. 2008) (rejecting a hostile work environment claim based on an allegedly discriminatory investigation and "separate and intermittent incidents" of "distasteful and inappropriate" conduct).

Ms. Grays's strongest allegations in support of a hostile work environment are the two instances in which a coworker made a derogatory comment about Jewish people while Ms. Grays was in earshot, but even these fall short. ECF No. 1 ¶¶ 19, 24. Ms. Grays does not allege that the comments were directed at her, and "[w]hen racial statements are not made directly to [the] plaintiff, generally a hostile environment cannot be established." *Harris*, 590 F. Supp. 2d at 76 (alterations in original) (quoting *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd sub nom.*, *Nurriddin v. Griffin*, 222 F. App'x 5, 5-6 (D.C. Cir. 2007)). But even if the statements had been directed at her, such comments—while deplorable—do not amount to "'intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (citation omitted) (quoting *Vinson*, 477 U.S. at 65, 67). The court will therefore dismiss Ms. Grays's hostile work environment claim (Counts II and IV).

### C.    Retaliation

Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (first alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). To establish retaliation, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal link connects the protected activity and the adverse action. *Jones v. Bernanke*, 557 F.3d 670, 677

(D.C. Cir. 2009).  An activity is considered "protected" under Title VII if it "involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment."  *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd* 573 F. App'x 1 (D.C. Cir. 2014) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91-92 (D.D.C. 2006)).

Ms. Grays contends that she engaged in protected activity by filing an EEO complaint for pregnancy discrimination in 2019 and by being associated with her then-husband when he filed EEO and whistleblower complaints.  ECF No. 1 ¶ 16.  The Secretary acknowledges that Ms. Grays's own EEO complaint was protected activity and does not dispute whether her then-husband's protected activity can be imputed to her, ECF No. 9-1, at 9; accordingly, the court will consider both as protected activity for purposes of her retaliation claim.  As for adverse action, the Secretary accepts that being subjected to investigations and not being selected for a position are sufficiently material to "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 8-9 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 56).[5]  However, the Secretary argues that Ms. Grays cannot establish causation between her protected activity and the alleged adverse actions.  The court again agrees with the Secretary.

To establish causation, Ms. Grays must allege sufficient facts to suggest that "her protected activity was a but-for cause of the alleged adverse action."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  One way a plaintiff can do so is "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place

---

[5] In her opposition, Ms. Grays repeats her allegations about being denied a water break, overhearing coworkers' comments, and the like as adverse actions for her retaliation claim, but she does not seriously contest that none meets the materially adverse threshold.  ECF No. 12, at 17-20; *see Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). "Temporal proximity can . . . support an inference of causation, but only where the two events are 'very close' in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation omitted) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that[,] in some instances[,] a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

Ms. Grays states that she engaged in protected activity in 2019, ECF No. 1 ¶ 16, but she does not specify the month, and she provides no information about when her then-husband filed his EEO and whistleblower complaints. Assuming, in the light most favorable to her, that she engaged in protected activity in December 2019, over a year passed between her protected activity and her first allegation of materially adverse action of being investigated for cash advance payments on her government travel card in January 2021. *Id.* ¶ 20. Such a long period does not support an inference of causation. *See Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (finding that a four-month gap could not support an inference of causation); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (same); *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (finding that a two-month gap could not support an inference of causation). Accordingly, the court concludes that Ms. Grays has failed to sufficiently allege a causal connection between her protected activity and any adverse action.

## V. CONCLUSION

For the foregoing reasons, the court will grant the Secretary's motion to dismiss, ECF No. 9. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 15, 2025